1  Larry C. Baron, Esq. – State Bar No. 153386
   larry@landeggeresq.com
2  Michael S. Lavenant, Esq. – State Bar No. 198765
   michael@landeggeresq.com
3  Jennifer Raphael Komsky, Esq. – State Bar No. 190228
   jennifer@landeggeresq.com
4  LANDEGGER, BARON, LAVENANT & INGBER
   A Law Corporation
5  15760 Ventura Boulevard
   Suite 1200
6  Encino, California 91436
   Telephone: (818) 986-7561
7  Facsimile:  (818) 986-5147

8  Attorneys for DEFENDANT
   THE ADULT INDUSTRY MEDICAL HEALTH
9  CARE FOUNDATION

10         **UNITED STATES DISTRICT COURT**

11      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13 DIANA LEE GRANDMASON and BESS )  CASE NO.: CV10-6629 GW (PLAx)
   GARREN,                       )
14                               )
           Plaintiffs,           )  **DEFENDANT THE ADULT**
15                               )  **INDUSTRY MEDICAL HEALTH**
       v.                        )  **CARE FOUNDATION'S**
16                               )  **OPPOSITION TO PLAINTIFFS'**
   THE ADULT INDUSTRY MEDICAL    )  **MOTION FOR CLASSS**
17 HEALTH CARE FOUNDATION,       )  **CERTIFICATION**
                                 )
18         Defendant.            )
                                 )  DATE:  January 27, 2011
19                               )  TIME:   8:30 a.m.
                                 )  CTRM: 10
20                               )
                                 )
21                               )
                                 )
22 ─────────────────────────────

23

24

25

26

27

28
                         i
   **AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**
                                        Printed on recycled paper

Defendant The Adult Industry Medical Health Care Foundation hereby submits its Opposition to Plaintiffs' Motion for Class Certification as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION.

Plaintiffs herein submit their Motion for Class Certification, despite the fact that they and their counsel are purporting to represent a class that they have actual conflicts with. It is readily apparent that Plaintiffs and their counsel have not filed this suit in an effort to represent the best interests of the putative class, but rather to further their own political agenda. Further, the declarations and evidence in support of their Motion are inadmissible[1]. As set forth in further detail below, Plaintiffs' Motion for Class Certification is unsupported and must be denied.

### II.     BACKGROUND FACTS.

Defendant The Adult Industry Medical Health Care Foundation (hereinafter "AIM") is a non-profit corporation that was formed to care for the physical and emotional needs of individuals who work in the adult entertainment industry through HIV and sexually transmitted disease ("STD") testing and treatment. Because the adult entertainment industry requires its performers to be tested every 30 days. AIM as well as other testing facilities provide locations for performers to get tested. AIM has devised a system whereby individuals are tested either at AIM, or at an affiliated draw station, and the results are available on a secure website (www.aimcheck.net) where producers can access and verify the test results of individuals prior to hiring them. The individuals that make use of this system of testing, sign an "Authorization To Release Test Results", (hereinafter "AIM Release".)

---

[1] See Objections to the Declarations and Evidence submitted in support of Plaintiffs' Motion for Class Certification. Plaintiffs' Declarations are not signed under penalty of perjury in violation of United States District Court, Central District of California, Local Civil Rules, L.R. 1-4 and 28 U.S.C. §1746.

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Printed on recycled paper

1   Plaintiffs, mother and daughter, are former performers in the adult
2   entertainment industry and utilized AIM's services between 2008 and 2009, signing
3   the AIM Release each time they were tested for HIV and STDs.  Plaintiffs are
4   represented by general Counsel for AIDS Healthcare Foundation (hereinafter
5   "AHF").  AHF is a non-profit organization that is as well known for the medical
6   treatment it provides as well as its advocacy and political activities.  AHF has a long-
7   standing history of antagonism towards AIM.  AHF has vilified AIM in its mission to
8   compel the adult entertainment industry to mandate the use of condoms.  AHF's
9   demonization of AIM in this regard is misguided since AIM is simply a medical
10  testing facility and has no power or influence, actual or otherwise, to compel an
11  entire industry to adhere to the mandates AFH seeks to impose.   This lawsuit is born
12  from AHF's over-zealous witch hunt against AIM and is nothing more than a
13  publicity stunt.

14  **III.    ARGUMENT.**

15  **a. PLAINTIFFS CANNOT SATISFY THE CLASS**
16  **CERTIFICATION REQUIREMENTS OF RULE 23.**

17  Plaintiffs assert their claims on their behalf and on behalf of a class of "all
18  patients, as defined by Civil Code § 56.05(g) for whom AIM created, maintained,
19  preserved and stored medical information, as defined by Civil Code §56.05(f), for
20  the past three (3) years, and whose medical information was made available by
21  AIM via aimcheck.net or any other database accessible via the internet." (See
22  Plaintiffs' Class Action Complaint for Damages, ¶45.)  Consequently, Plaintiffs
23  must satisfy the requisites of Rule 23(a) and (b).

24  In conducting the "rigorous analysis" for class certification, Plaintiffs must
25  prove each element under Rule 23.  *Blackwell v. SkyWest Airlines, Inc.*
26  (S.D.Cal.2007) 245 F.R.D. 453, 459.  Though the Court does not address the
27  merits of the claim in the class inquiry, it considers the elements of the claims to
28

1  analyze the issues.  *Id.*  Plaintiffs' claims are for 1) Violation of Civil Code §§56,

2  et seq.; 2) Public Disclosure of Private Facts; and 3) Unfair and Deceptive Trade

3  Practices pursuant to Business and Professions Code , §17200.

### i.  Plaintiffs' Cannot Satisfy Rule 23(a)'s Requirements of Commonality, Typicality, And Adequacy.

6  To certify the proposed class action, Plaintiffs must first demonstrate the

7  numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)

8  are satisfied.  FRCP 23(a).  As set forth below, Plaintiffs cannot satisfy the

9  commonality, typicality and adequacy requirements of this case.

10  **Commonality**

11  Commonality requires that there must be common question of law or fact

12  common to the class.  Generally, the "common question" requirement under

13  subsection (a) can be satisfied either by a shared legal issue with divergent factual

14  predicates or by a common core of salient facts with disparate legal remedies.

15  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019.  Though this

16  standard has been held to be a qualitative analysis rather than a quantitative one

17  and a common issue of law or fact can suffice to satisfy the commonality

18  requirement, the Court must be convinced that the most *efficient* method of

19  determining the rights of the parties is through class action.  *Califano v. Yamasaki*

20  (1979) 442 U.S. 682, 701.  In this respect, "certification is proper only when a

21  determinative critical issue *overshadows all other issues.*"  *Stott v. Haworth* (4th

22  Cir. 1990) 916 F.2d 134, 145 (emphasis added).

23  Plaintiffs cannot satisfy this requirement given the liability elements they

24  need to prove.  Plaintiffs' purported class is composed of adult film industry

25  professionals that have undergone testing at Defendant's facility.  Plaintiffs' claim

26  that the alleged common questions of law or fact pursuant to Rule 23(a) is

27  "whether the AIM Releases legally permit the Defendant to publish private

28

3

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   medical records on a website accessible to persons within the adult film industry,

2   and if not, whether putative class members are entitled to compensation for the

3   unauthorized disclosure of their medical data, and finally, whether the

4   Defendant's collusion with the adult film industry constitutes an unfair trade

5   practice under California law." (See Plaintiffs' Motion for Class Certification,

6   page 10, line 25 – page 11, line 2.)

7         The problem with Plaintiffs' purported common questions of law or fact is

8   that it does not resolve the inquiry regarding commonality by showing that class

9   treatment is the most efficient means to resolve the case.  Even assuming the

10   policies exist, the issue will be whether the particular application of the policy is

11   unlawful.  In other words, liability is not imposed merely by the existence of the

12   policy, but whether the application of the policy is illegal under the circumstances

13   for each putative Plaintiff.  For example, many, if not most, of the putative

14   Plaintiffs intend to have their testing results made available on aimcheck.net to

15   possible production companies on the grounds that it could lead to employment

16   opportunities.  It is impossible to determine whether all or any putative class

17   member intended for their testing results to be made widely accessible through

18   aimcheck.net.  This factor is a prerequisite for liability on these claims.  Indeed,

19   the existence or not of the policies gets the Plaintiffs nowhere since the policies

20   are not per se unlawful.  Similarly, since the determination of whether a

21   disclosure is compensable depends on the circumstances of the individuals, it is

22   impossible to present any uniform set of circumstances under which the

23   Defendant is liable, and Plaintiffs' have not presented any evidence to that effect.

24   **Typicality**

25         The claims and defenses of the class representatives must be typical of the

26   claims or defenses of the class.  For Plaintiffs' claims to be typical of the class',

27   their claims must arise from the same event or practice or course of conduct that

28

1   gives rise to the claims of other class members, or is based on the same legal

2   theory. *Rosario v. Laviditis* (7th Cir. 1992) 963 F.2d 1013, 1018.  Typicality may

3   be lacking if unique defenses to the representatives are not applicable to the class,

4   such as waiver, release or estoppel. *Ross v. Bank South, N.A.* (11th Cir. 1988)

5   837 F.2d 980, 900.

6        In this case, the class representatives have difficulties regarding typicality

7   with respect to the class.  First, there are unique defenses that will be raised to the

8   class representatives that may not be raised against the class.  For example, as set

9   forth in their Complaint, "Plaintiffs assert that their protected health information

10  was and remains available to anyone with a username and password for AIM's

11  database at aimcheck.net."  (See Plaintiffs' Class Action Complaint for Damages,

12  ¶44.)  Individual factual inquiries will be required of each putative class member

13  to discern whether his or her health information is and/or was available on

14  aimcheck.net.

15       There will also be other individual inquiries that will predominate the

16  claims such as whether the putative class members read and/or understood the

17  Release, whether they had the opportunity to ask questions concerning the

18  Release and whether each putative class member's waiver contained in the

19  Release is valid under the circumstances.

20       Further, at least one Plaintiff claims that her private information was

21  transmitted to other websites and went "viral."  See Declaration of Jennifer

22  Raphael Komsky, Exhibit 3.

23       Finally, Plaintiffs do not have any evidence of an industry-wide policy or

24  practice that required any putative class member obtain testing only through AIM.

25  **Adequacy of Representation**

26       The final requirement of Rule 23(a) is that the class representatives "will

27  fairly and adequately protect the interests of the class." *Blackwell, supra,* 245

28

5

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Printed on recycled paper

1   F.R.D. at 464.  In analyzing this question, the Court asks "(1) do the named

2   plaintiffs and their counsel have any conflicts of interest with other class

3   members, and (2) will the named plaintiffs and their counsel prosecute the action

4   vigorously on behalf of the class."  *Id.*

5         In this case, there is clear antagonism between the class representatives and

6   the class to the detriment of the class.  At least one of the Plaintiffs, Ms.

7   Grandmason, has become a public advocate in opposition to the class of adult

8   industry professionals that she purports to represent in this action  [Decl. of JRK].

9   In one of Ms. Grandmason's public blogs, she provides the following as her

10  biography:

11          "My name is Diana and I worked inside the porn industry
            for 1 1/2 years. The Porn Industry sells you fantasies.
12          Here, you can learn about the realities of porn for free.
            There are women and children who are trafficked into
13          Porn Valley every year. They are exposed to multiple
            STDs and HIV because producers won't provide a safe
14          work environment. Degradation and abuse of women in
            porn is increasing sexual violence all across America.
15          Read for yourself and then decide . . Is your
            entertainment worth all the damage porn is doing to our
16          society??"

17

18        Further, in Ms. Grandmason's Myspace page, she describes herself as

19  "Former Pornstar-Current Anti Porn Activist."  See Declaration of Jennifer

20  Raphael Komsky, Exhibit 1.  The reality is that Plaintiff Diana Grandmason has

21  an actual conflict as a self-described "Anti-Porn Activist" purporting to represent

22  current and former pornography professionals in a class action lawsuit.  This

23  conflict is incurable.  Plaintiff's conduct and the credibility issues raised by it

24  create an incurable conflict of interest with the class, rendering her inadequate to

25  represent the interests of the class.

26        Likewise, counsel for Plaintiffs and the purported class have the same

27  conflicts as do their clients.  Plaintiffs' counsel Tom Myers and F. Brian Chase

28
                                              6
        **AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**
                                                        Printed on recycled paper

1  both serve as general counsel for AIDS Healthcare Foundation ("AHF".)  AHF

2  has been very vocal in their disdain for Defendant AIM and are vociferous in their

3  efforts to shut them down.  In fact, prior to the filing of this action, in March,

4  2010, AHF arranged a public demonstration at Defendant's place of business in

5  furtherance of their true goal.  Clearly, AHF's interests differ greatly from those

6  of the class they are purporting to represent.  See Declaration of Jennifer Raphael

7  Komsky, Exhibit 2.

8         In an interview concerning this case by National Public Radio, AHF's

9  President admitted that the true intention of the lawsuit is to force adult

10 performers to use condoms:

11           "Some in the porn industry say the lawsuit is more about

12           an effort to force adult performers to use condoms. That's

          a position being advocated by the AIDS Healthcare

13           Foundation, or AHF. In fact, the group's lawyers are

14           representing the women pro bono.

15           And AHF's president, Michael Weinstein, admits that the

          lawsuit is part of a bigger safer-sex message.

16

17           Mr. MICHAEL WEINSTEIN (President, AIDS

          Healthcare Foundation): This could be ended today if the

18           industry would agree to condom use."

19      See Declaration of Jennifer Raphael Komsky, Exhibit 3.

20

21        Further, counsel for Plaintiffs, Tom Myers and F. Brian Chase, while they

22 are obviously well-pedigreed attorneys, have provided no evidence that they are

23 capable or experienced to handle class action litigation.  Although attorney Chase

24 avers that "[w]hile in private practice I represented Volvo Cars of North America

25 in several multistate class actions", he does not detail his involvement in that

26 litigation and whether that experience is applicable to this litigation, purporting to

27 represent Plaintiffs.

28

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Printed on recycled paper

1
ii.     **Common Questions Of Law And Fact Do Not Predominate**
2
        **Over Individual Issues, Rendering Class Action Treatment**
3
        **Inferior Since The Claims Necessarily Require An**
4
        **Individual Analysis.**

5   Plaintiffs must also demonstrate that they can certify the class under one of
6   the three types of class actions enumerated in subsection (b) of Rule 23.  Plaintiffs
7   here attempt to do so pursuant to Rules 23(b)(2) and 23 (b)(3).

8   **Rule 23(b)(2)**

9   Plaintiffs contend that class certification is appropriate pursuant to Rule
10  23(b)(2) because Defendant "has acted or refused to act on grounds generally
11  applicable to the class, thereby making appropriate final injunctive relief or
12  corresponding declaratory relief with respect to the class as a whole."

13  However, class certification is inappropriate pursuant to Rule 23(b)(2)
14  because the class of Plaintiffs' claimed damages is individualized in nature.
15  Although Plaintiffs claim that the request for monetary relief is incidental to the
16  injunctive relief, the purported damages here do <u>not</u> "flow directly from liability
17  to the class as a whole on the claims forming the basis of the injunctive or
18  declaratory relief." *Allison v. Citgo Petroleum Corp.* (5th Cir. 1998) 151 F3d 402,
19  415.  It has been further explained that "incidental" in this context means "the
20  computation of damages is mechanical, without the need for individual
21  calculation . . .so that a separate damages suit by individual class members would
22  be a waste of resources." *In re Allstate Ins. Co.*, (7th Cir. 2005) 400 F.3d 505,
23  507.

24  Here, if it determined that Civil Code §56 applies, the damage analysis
25  necessarily requires an individual analysis since the penalties imposed pursuant to
26  Civil Code §56 are imposed *per violation*:  "Plaintiffs and the Class seek actual
27  damages, as well as nominal damages of one thousand dollars ($1,000) per

28

8

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  violation pursuant to Civil Code § 56.36(b)(2), and punitive damages up to three

2  thousand dollars ($3,000) per violation pursuant to Civil Code § 56.35." (See

3  Plaintiffs' Class Action Complaint for Damages, ¶60.)

4  **Rule 23(b)(3)**

5  Under subsection (b)(3), the proponent of the class must proffer sufficient

6  evidence to answer the following questions: "(1) do issues common to the class

7  'predominate' over issues unique to the individual class members, and (2) is the

8  proposed class action 'superior' to other methods available for adjudicating the

9  controversy." *Maddock v. KB Homes, Inc.* (C.D.Cal. 2007) 248 F.R.D. 229, 240.

10 As to the latter requirement, "the Court must determine whether plaintiffs have

11 shown that there are plausible class-wide methods of proof available to prove

12 their claims." *Id.*

13 The predominance standard has been explained thus:

14 Implicit in the satisfaction of the predominance test is the notion that the
adjudication of common issues will help achieve judicial economy. The

15 inquiry is whether common issues constitute such a significant aspect of the
action that there is a clear justification for handling the dispute on a

16 representative rather than on an individual basis. For the proponent to

17 satisfy the predominance inquiry, it is not enough to establish that common
questions of law or fact exist, as under Rule 23(a)(2)'s commonality

18 requirement—the predominance inquiry under Rule 23(b) is more rigorous.

19 The predominance question tests whether proposed classes are sufficiently
cohesive to warrant adjudication by representation. The Court, therefore,

20 must balance concerns regarding the litigation of issues common to the

21 class as a whole with questions affecting individual class members. *Id.*
(*citations, quotes omitted*).

22

23 As set forth above, in the analysis of Commonality of claims, this case is

24 not appropriate for Class Certification in that the individual questions of law and

25 fact predominate. Further, the rule requiring that common questions predominate

26 is "far more demanding" than "commonality". *Gene and Gene LLC v. BioPay*

27 *LLC* (5th Cir. 2008) 541 F3d 318, 326. Plaintiffs simply do not meet this burden.

28

9

**AIM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Printed on recycled paper

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   PLAINTIFFS WILL NOT BE ABLE TO PROVE THEIR CLAIMS ON THE MERITS EVEN IF THEY PREVAIL ON CLASS CERTIFICATION.

Plaintiffs also cannot establish liability for any of the claims on the merits of the claims.  First, as set forth above, it is clear that Plaintiffs and the purported class signed valid waivers as part of the medical testing process.  Further, Plaintiffs' counsel previously lodged similar complaints with the United States Department of Health and Human Services ("HHS").  HHS investigated AHF's complaints of February 24, 2010 concerning the alleged unauthorized release of medical information.  On July 14, 2010, the HHS, completed and closed its investigation after a determination that AIM is not a "covered entity" and therefore, not subject to the Privacy and Security Rules set forth by the federal standards.   See Declaration of Jennifer Raphael Komsky, Exhibit 4.

## V.   CONCLUSION.

Based on the foregoing, Defendant respectfully requests that this Court deny class certification.

DATED:  January 6, 2011        LANDEGGER | BARON | LAVENANT | INGBER
                               A Law Corporation


                        By:    _____
                               JENNIFER RAPHAEL KOMSKY
                               Attorneys for Defendant
                               THE ADULT INDUSTRY MEDICAL HEALTH
                               CARE FOUNDATION

10
Printed on recycled paper