TOM MYERS, SBN 176008
tomm@aidshealth.org
F. BRIAN CHASE, SBN 242542
Brian.Chase@ahidshealth.org
6255 West Sunset Boulevard, 21st Floor
Los Angeles, California 90028
Tel: (323) 860-5200); Fax:  (323) 467-8450

TINA WOLFSON, SBN 174806
twolfson@ahdootwolfson.com
ROBERT AHDOOT, SBN 172098
rahdoot@ahdootwolfson.com
THEODORE W. MAYA, SBN 223242
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, APC
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Tel: (310) 474-9111; Fax:  (310) 474-8585

Attorneys for Plaintiffs,
DIANA LEE GRANDMASON and
BESS GARREN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA LEE GRANDMASON and BESS GARREN, individuals, on their own behalf, on behalf of the general public, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE ADULT INDUSTRY MEDICAL HEALTH CARE FOUNDATION, AIM MEDICAL ASSOCIATES, P.C., and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.  10-cv-6629 GW (PLAx)<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 16, 2011<br>Time: 8:30 AM<br><br>The Honorable George Wu<br>Courtroom: 10 |

i

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS                                                          ii

TABLE OF AUTHORITIES                                                       iv

NOTICE                                                                      1

MOTION FOR CLASS CERTIFICATION                                             1

MEMORANDUM OF POINTS AND AUTHORITIES                                        2

I.      FACTS                                                               2

        A.     Procedural Facts.                                           2

        B.     Underlying Facts.                                           4

               1.     The AIM Foundation Changed Its "Corporate Status" To "AIM
                      Medical Associates, P.C."                            6

               2.     The Legal Deficiencies of the AIM Release Form.      9

II.     ARGUMENT                                                          11

        A.     Introduction .                                            11

        B.     The Members Of The Class Are So Numerous That Joinder Of All
               Class Members Is Impracticable.                            12

        C.     The Issues Involved Are Common To The Class As
               A Whole.                                                   14

        D.     Plaintiffs' Claims Are Typical Of Those Of The Class.      15

        E.     Plaintiffs Will Fairly And Adequately Protect The Interests Of The
               Class.                                                     17

               1.     Plaintiffs' Counsel Are Adequate Class Counsel.     17

                      a.     Tom Myers, Esq.                              18

           b.      F. Brian Chase, Esq.           18

           c.      Ahdoot & Wolfson, PC.       19

F.    Injunctive Relief Is Appropriate And Is The Primary Relief Sought In This Action.     20

G.    Common Questions Of Law And Fact Predominate.     21

III.    CONCLUSION     23

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abed v. A.H. Robins Co., Inc.,* 693 F.2d 847 (9th Cir. 1982)....................22

*Ahsmus v. Calderon*, 935 F.Supp. 1048 (N.D. Cal. 1996) ........................13

*Ansari v. New York Univ.*, 179 F.R.D. 473 (S.D.N.Y. 1998)....................13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).....................................15

*Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686
(9th Cir. 1977) ...........................................................................................12

*Baby Neal For and By Kanter v. Casey*, 43 F.3d 48 (3d Cir.
1994) ..........................................................................................................14

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473
(2nd Cir. 1995)...........................................................................................13

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ...............20, 21

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1976) .................................11

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1997) .....................14

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992)...................12

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th
Cir. 1964).....................................................................................................12

*Hodgers-Durgin v. Vina*, 165 F.3d 667 (9th Cir. 1999)............................16

*In re Badger Mountain Irrig. Dist. Sec. Litig.*, 143 F.R.D. 693
(W.D. Wash. 1992)......................................................................................13

*In re N.D. Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d
847 (9th Cir. 1982) ................................................................ 17

*In re Coordinated Pretrial Proceedings in Petroleum Products*
*Antitrust Litg.*, 691 F.2d 1335 (9th Cir. 1992)............................ 12

*In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15386, 2004
WL 1638201 (C.D. Cal. 2004) ................................................ 16

*Schlagel v. Learning Tree Int'l*, 1999 U.S. Dist. LEXIS 2157
(C.D. Cal. 1999)...................................................................... 15

*Weinberger v. Thorton*, 114 F.R.D. 559 (S.D. Cal. 1986) ........ 16

**STATUTES**

Cal Bus. & Prof. Code § 17200 ................................................ 11

Cal Bus. & Prof. Code § 17203 ................................................ 14

Cal Bus. & Prof. Code § 17208 ................................................ 11

Fed. R. Civ. P. 23.............................................................. passim

Fed. R. Civ. P. 23(a)(1) ............................................................ 12

Fed. R. Civ. P. 23(a)(2) ..................................................... *passim*

Fed. R. Civ. P. 23(a)(3) ..................................................... *passim*

Fed. R. Civ. P. 23(a)(4) ............................................................ 17

Fed. R. Civ. P. 23(b)(2) ..................................................... *passim*

Fed. R. Civ. P. 23 (b)(3) ..................................................... *passim*

Cal. Civil Code § 56.35 ...................................................... 20, 22

Cal. Civil Code § 56.36(b)(2) ................................................................ 17, 20, 22

Cal. Civ. Code § 56.11(b) ................................................................ 10

Cal. Civ. Code § 56.11(f) ................................................................ 9

Cal. Civ. Code § 56.11(g) ................................................................ 9

Cal. Civ. Code § 56.11(h) ................................................................ 9

Cal. Civ. Code § 56.11(i) ................................................................ 10

Cal. Health & Safety Code § 20980(g) ................................................................ 10

**REGULATIONS**

45 CFR § 164.508(c)(1)(iii) ................................................................ 9

45 CFR § 164.508(c)(1)(v) ................................................................ 10

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

## NOTICE

Notice is hereby given that a hearing on Plaintiffs' Motion for Class Certification will be held on May 16, 2011, at 8:30 a.m. before the Honorable George H. Wu. Plaintiffs respectfully move the Court for an Order granting class certification under Federal Rules of Civil Procure, Rules 23(a), (b)(2) and (b)(3). This motion is based on this Notice of Motion and all accompanying attachments hereto.

## MOTION FOR CLASS CERTIFICATION

Pursuant to Rule 23 Plaintiffs hereby move this Court to certify a class. The Class that Plaintiffs seek to represent is:

> All persons who have executed an "AIM Release" and whose medical information was disclosed or available for disclosure by "AIM" on www.aimcheck.net or any other website or online database maintained by AIM, from June 28, 2006 until the final disposition of this case. The term "AIM" means and includes the Adult Industry Medical Health Care Foundation and AIM Medical Associates, P.C. The term "AIM Release" means and includes any release form purportedly authorizing AIM to disclose medical information on www.aimcheck.net or any other website or online database maintained by AIM. Excluded from the Class are AIM; officers, directors, and employees of AIM; any entity in which AIM has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of AIM.

Plaintiffs further ask that they be designated as class representatives, and that the undersigned attorneys be designated class counsel.

/ / /

/ / /

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.   <u>FACTS</u>

A.   <u>Procedural Facts</u>.

Plaintiffs filed their initial motion to certify a class in this matter on December 30, 2010.  The Court thereafter issued a tentative which concluded, *inter alia*, that the Court "would certify the class with respect to all three claims for relief under Rule 23(b)(3), though it will strongly consider ruling that, with respect to the first claim, it is certified only if the claim for punitive damages under Civil Code §56.35 is excluded."  The Court also commented that it "ultimately might consider whether additional counsel should be appointed to shore up any issues with the adequacy of counsel and might even *condition* any certification order on such an appointment."  (*Minutes*, filed in this matter on January 27, 2011, p. 10, 16-17.)

On March 14, 2011, the law firm of Ahdoot & Wolfson, PC filed an application to be appointed co-class counsel in this matter.

During the March 21, 2011 class certification hearing and scheduling conference, the Court granted Ahdoot & Wolfson's application to be co-counsel for the class and instructed Plaintiffs to file the First Amended Complaint ("FAC") forthwith.  The Court also stated that though it would certify a class pursuant to its tentative, it would do so after a new defendant (AIM Medical Associates, P.C.) had an opportunity to respond to the FAC.  Finally, the Court vacated Plaintiffs motion

for class certification and instructed Plaintiffs to re-file the Motion, with a hearing set for May 16, 2011.  The Court further ordered that the "[p]arties may stipulate as to the briefing schedule, except the reply, which will be due by May 9, 2011."

Plaintiffs filed the FAC on March 23, 2011. The FAC (i) withdrew the prayer for punitive damages, (ii) added an additional defendant, AIM Medical Associates, P.C. ("AIM PC"), and (iii) and amended the previous definition of the class the Plaintiffs seek to certify.  AIM PC was personally served with the FAC on March 24, 2011.

Following the March 21st hearing, Plaintiffs attempted to meet and confer with attorneys for the Adult Industry Health Care Foundation ("AIM Foundation") with respect to a filing schedule for this Motion.  Defendants did not engage in meet and confer regarding this issue. (Declaration of Robert Ahdoot ("Ahdoot Decl."), filed concurrently herewith, at ¶ 2.)  Instead, on March 31, 2011, defense counsel informed Plaintiffs that they intended to file a motion to withdraw as counsel for the AIM Foundation.

AIM Foundation and AIM PC shall hereafter be collectively referred to as "AIM." (*See, infra*, Section I.B.1., "AIM Foundation Changed Its Corporate Status to AIM PC.")

On April 15, 2011, Plaintiffs attempted to meet and confer, via e-mail, with defense counsel and Eric Fulton (agent for service of process for AIM PC) regarding

AIM PC's failure to file a response to the FAC. (Ahdoot Decl. at ¶ 3.)  Immediately following the transmission of this e-mail, on April 15, 2011 the AIM Foundation defense attorneys filed a motion to withdraw as counsel of record in this matter, as well as an Answer to the FAC, on behalf of the AIM Foundation, only.  (*Id.*)  Thereafter, also on April 15, 2011, Plaintiffs filed a Request for Entry of Default with respect to AIM PC. (*Id.*)

      **B.**      <u>**Underlying Facts**</u>.

      Plaintiffs Diana Lee Grandmason ("Grandmason") and Bess Garren ("Garren") are former performers in the adult film industry.  As a condition of working in that industry, Grandmason and Garren were required by their employers to undergo testing at their own expense for human immunodeficiency virus ("HIV"), chlamydia and gonorrhea every thirty days. (<u>Exhibit ("Ex.") A</u>,[1] Amended Declaration of Diana Lee Grandmason in Support of Class Certification ("Grandmason Decl."), filed with the Court on January 13, 2011, at ¶ 4; <u>Ex. B</u>, Amended Declaration of Bess Ann Garren in Suport of Class Certification ("Garren Decl."), filed with the Court on January 13, 2011, at ¶ 4).  Both their respective talent agents and the producers of the films that employed Grandmason and Garren required them to obtain testing through AIM, rather than at another healthcare facility. (<u>Ex. A</u>, Grandmason Decl. at ¶ 5; <u>Ex. B</u>, Garren Decl. at ¶ 5.)

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1    Such "AIM Foudation-only" policies are commonplace within the adult film

2    industry. (Ex. A, Grandmason Decl. at ¶ 6; Ex. B, Garren Decl. at ¶ 6.)  Garren was

3

4    tested for HIV, chlamydia and gonorrhea at AIM on ten occasions in 2008 and

5    2009 and Grandmason was tested for HIV, chlamydia and gonorrhea at AIM on

6

7    nine occasions in 2008 and 2009. (Ex. A, Grandmason Decl. at ¶ 7; Ex. B, Garren

8    Decl. at ¶ 7.)

9
         As a condition of testing, AIM requires adult film performers to sign a form
10
11   captioned "Authorization to Release Test Results (HIV+G/C+RPR)" (the "AIM

12   Release Form") (Ex. A, Grandmason Decl. at ¶ 8; Ex. B, Garren Decl. at ¶ 8.)

13
     Both Garren and Grandmason signed an AIM Release Form, a copy of which is
14
15   attached to the Grandmason Declaration as Exhibit "A". (Ex. A, Grandmason Decl.

16   at ¶ 9; Ex. B, Garren Decl. at ¶ 9.)

17
18        The AIM Release Form purports to authorize Defendants to release the

19   results of medical testing "to any duly authorized agent of AIM or others as AIM
20
21   may deem appropriate". (Ex. A, Exhibit "A" to the Grandmason Decl., AIM

22   Release Form ¶ 4.) The AIM Release Form further purports to insulate AIM, its

23
24   employees and agents, and performers' individual talent agents from any liability

25   for damages incurred as a result of the disclosure of medical testing results. (Id. at
26
27   ¶ 6).

28
─────────────────────────────────────

[1]      All exhibits referred to herein are those to the Ahdoot Decl. attached hereto,

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

AIM publishes performers' sexually transmitted disease test results on a website located at the URL "aimcheck.net" which is accessible to anyone with a user name and password to the website. (Ex. C, Exhibit "A" to the Amended Declaration of F. Brian Chase in Support of Class Certification ("Chase Decl."), filed with the Court on January 13, 2011, AIM Foundation's Supplemental Responses to Plaintiff's Class Certification Interrogatories ("Defendant's Supplemental Responses") Nos. 4 & 7.) AIM Foundation requires producers of adult films to execute a document captioned "Electronic Service Contract Agreement By And Between AIM Healthcare Foundation ("AIM") and _____ ("Aimcheck Client")" (Ex. C, Exhibit "B" to the Chase Decl., The "Aimcheck Agreement".) The Aimcheck Agreement specifies that adult film producers who agree to pay AIM $200 per month, styled as a "donation", are "assigned a unique password which will allow restricted access to HIV/CHLYMADIA (*sic.*) AND GONORRHEA tests results." (*Id.* at ¶¶ 1 & 4).

### 1. The AIM Foundation Changed Its "Corporate Status" To "AIM Medical Associates, P.C."

The original defendant in this matter was the AIM Foundation, a non-profit 501(c) (3) organization. On or about December 9, 2010, AIM Foundation was apparently shut down by the Los Angeles County Department of Public Health for failing to maintain a mandatory community clinic license. (Ex. D, Letter addressed

unless otherwise indicated.

1  to AIM Foundation from County of Los Angeles Department of Public Health, dated

2  December 9, 2011.)

3

4      Shortly thereafter, on or about December 17, 2011, the articles of

5  incorporation of a for-profit professional corporation named AIM Medical

6

7  Associates, P.C. was filed with the California Secretary of State.  (Ex. E, Articles of

8  Organization of AIM PC; Ex. F, California Secretary of State's "Business Entity

9  Detail" web page.)

10

11     On or about January 20, 2011, on a twitter page entitled,

12  http://twitter.com/AIMMEDASSOCPC  (last visited on February 2, 2011), which

13  purportedly belonged to AIM, the following was posted:

14

15     **"We are now from AIM Healthcare Foundation to AIM Medical**

16     **Associates P.C.** 9:37 AM Jan 20th via Facebook."

17

18  (*See*, Ahdoot Decl. at 4 (Emphasis in original.)

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

---

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

On or about February 4, 2011, the AIM Foundation website posted the following web page under its "News & Events" heading:

**THE ADULT INDUSTRY MEDICAL HEALTHCARE FOUNDATION IS NOW AIM MEDICAL ASSOCIATES P.C.- DOORS ARE OPEN AND THE CLINIC IS BETTER THAN EVER!**

- by gigih                   2.4.11                          page 1 of 1

***The Adult Industry Medical Healthcare Foundation is now AIM Medical Associates P.C.*** - Doors are open and the clinic is better than ever!

Van Nuys, CA - Thursday, February 3rd, ***AIM (formerly Adult Industry Medical Healthcare Foundation)*** re-opened for full services. ….

***As the doors re-opened on the clinic there was one big change, "The Adult Industry Medical Healthcare Foundation" is now "AIM Medical Associates P.C." a private corporation.*** Visitors to the clinic will experience only improvements in the day to day client services provided by AIM. ***The change in the corporate status of AIM*** will now allow for the evolution into the vision begun 13 years ago. Relieved from pointless harassment that came with oversight from the County Health Department, the new AIM more appropriately is responsible to the California Medical Association. …

Sharon Mitchell PH.D.
CEO, AIM Medical Associates P.C.
(818) 981-5681 Ph - (818) 981-3851 Fx
www.AIM-Med.org

(Ex. G, Defendants' February 4, 2011 "News and Events" web page; *see also*, http://www.aim-med.org/news/2011/02/04/1296834738/ (last visited April 16, 2011); Emphasis added.)

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

## 2.     The Legal Deficiencies of the AIM Release Form.

Plaintiffs assert that the AIM Release Form is legally deficient in several particulars.  Specifically, Plaintiffs argue:

- The AIM Release Form does not state "the name or functions of the persons or entities authorized to receive the medical information" in violation of Cal. Civ. Code § 56.11(f).

- The AIM Release Form does not contain "[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure" in violation of 45 CFR § 164.508(c)(1)(iii).

- The AIM Release Form fails to state "the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information" in violation of Cal. Civ. Code § 56.11(g).  Instead, the AIM Release Form gives AIM Foundation unfettered discretion to release patients' medical information as it deems appropriate.

- The AIM Release Form does not state "a specific date after which the provider of health care... is no longer authorized to disclose the medical information" in violation of Cal. Civ. Code § 56.11(h).

- The AIM Release Form purports to allow an unlimited number of

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

disclosures of HIV test results to an unlimited number of unspecified parties, in violation of Cal. Health & Safety Code § 20980(g), which provides that "[w]ritten authorization is required for each separate disclosure of the test results, and shall include to whom the disclosure would be made."

- The AIM Release Form does not include an expiration date, in violation of 45 CFR § 164.508(c)(1)(v).

- The AIM Release Form does not "advise the person signing the authorization of the right to receive a copy of the authorization" in violation of Cal. Civ. Code § 56.11(i).

- The AIM Release Form purports to both authorize the release of medical information and to indemnify AIM Foundation, in violation of Cal. Civ. Code § 56.11(b), which requires that the signature on a release of medical information "serves no purpose other than to execute the authorization."

Because the AIM Release Form is legally defective, any disclosures of private medical information by Defendants are actionable.  Multiple statutory and common law remedies are available to patients whose private medical information is disclosed without a proper written authorization.

Plaintiffs further assert that Defendants' collusion with the producers of

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

adult films and agents within the adult film industry to require employees to obtain testing for sexually transmitted diseases exclusively through the Defendants constitutes an unfair trade practice in violation of Cal. Bus. & Prof. Code §17200 *et seq.*  Pursuant to the statute of limitation of the California Unfair Competition Law, Plaintiffs also assert that the Class Period should commence from four years prior to the filing of this action until the final disposition of this matter, *i.e.* beginning June 28, 2006 until final disposition.[2]  Thus, the class that Plaintiffs seek to represent is:

> All persons who have executed an "AIM Release" and whose medical information was disclosed or available for disclosure by "AIM" on www.aimcheck.net or any other website or online database maintained by AIM, from June 28, 2006 until the final disposition of this case.  The term "AIM" means and includes the Adult Industry Medical Health Care Foundation and AIM Medical Associates, P.C.  The term "AIM Release" means and includes any release form purportedly authorizing AIM to disclose medical information on www.aimcheck.net or any other website or online database maintained by AIM.  Excluded from the Class are AIM; officers, directors, and employees of AIM; any entity in which AIM has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of AIM.

II.    **ARGUMENT**

A.    **Introduction.**

In determining whether a class may be certified, the Court does not consider the merits of Plaintiffs' claims. (*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177

---

[2]    Cal. Bus. & Prof. Code § 17208 provides that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

(1976) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action").)  In reviewing a motion for class certification, the Court is generally bound to accept the allegations in the complaint as true. (*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litg.*, 691 F.2d 1335, 1342 (9th Cir. 1992); *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686 (9th Cir. 1977).)  The Court may also look beyond the pleadings to determine whether the requirements of Rule 23 have been met. (*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992).)

A class should be certified when the proponents satisfy all four requirements of Rule 23(a) and at least one requirement of Rule 23(b). (Fed. R. Civ. P. 23).  In this instance, the proposed class satisfies all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(2) and (3).

**B.     The Members Of The Class Are So Numerous That Joinder Of All Class Members Is Impracticable.**

Rule 23(a)(1) requires that class members be so numerous that joinder of all of them is "impracticable."  Impracticable does not mean impossible. (*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964).)  The impracticability requirement simply requires that the number of potential claims renders joinder very difficult or inconvenient.  (*Id.*)  The precise enumeration of

the members of the class is not necessary in order to proceed as a class action.  A "reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1)." (*In re Badger Mountain Irrig. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).)

The precise number of potential class members is not known at this time. Defendants estimate that "at any given time between 2008 and 2010, approximately 900 individuals may have had their test results available on aimcheck.net". (Ex. C, Exhibit "A" to Chase Decl., Defendant's Supplemental Responses No. 4).

Courts have generally held that the numerosity requirement of Rule 23(a)(1) is satisfied if the class consists of forty member or more. (*Ansari v. New York Univ.*, 179 F.R.D. 473, 483 (S.D.N.Y. 1998); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995).)  Within the Ninth Circuit, classes of fewer than 100 persons have been found to be sufficiently numerous to satisfy Rule 23(a)(1) (*See, e.g., Ahsmus v. Calderon*, 935 F.Supp. 1048, 1064 (N.D. Cal. 1996) (certifying a class of 52 members).)

By Defendants' admission, the putative class has at least 900 members. And, because performers come and go from the adult film industry regularly, the

putative class most probably numbers in the thousands.[3]

Under any analysis, the numerosity requirement of Rule 23(a)(1) is satisfied.

## C.   The Issues Involved Are Common To The Class As A Whole.

Under Rule 23(a)(2) class relief is "particularly appropriate" when the "issues involved are common to the class as a whole" or when they "turn on questions of law applicable in the same manner to each member of the class." (*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1997).)  Not all questions of fact and law must be common in order to satisfy the commonality requirement.  In fact "there must only be one single issue common to the whole class." (*Haley, supra,* 169 F.R.D. at 648; *Baby Neal For and By Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).)

Here the overarching issues of law are common to the class as a whole.  The central issues surrounding this claim are whether the AIM Release Form legally permits the Defendants to publish private medical records on a website accessible to persons within the adult film industry, and if not, whether putative class

---

[3]     Indeed, on or about March 30, 2011, various website and news publications reported that the medical and personal information, including stage names, legal names, and testing results, of some 12,000 to 15,000 porn performers were posted on the website known as www.pornwikileaks.com.  The news articles widely reported that this information could have only come from aim. (*See, e.g.*, Ex. H, Henessey-Fiske Molly, "San Fernando Valley Clinic Investigates Possible Leaks Of Porn Performers' Patient Information," *Los Angeles Times*, April 4, 2011; *see also, e.g.*, Ex. I, Adrien Chen, "Porn Star HIV Test Database Leaked," *www.gawker.com*, March 30, 2011.)

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

members are entitled to compensation for the unauthorized disclosure of their medical data, and finally, whether the Defendants' collusion with the adult film industry constitutes an unfair trade practice under California law.  All of these issues are common to every member of the putative class.

Furthermore, the commonality requirement is automatically satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." (*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).) Here, Grandmason and Garren challenge the system-wide practice within the adult film industry of publishing private medical information on a widely-accessible website.  Grandmason and Garren challenge also the system-wide practice of requiring performers in the adult film industry to submit to testing at a single medical facility.   Grandmason and Garren further challenge the system-wide practice of shifting the cost of medical testing onto performers, rather than the producers of adult films.  Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### D.    Plaintiffs' Claims Are Typical Of Those Of The Class.

The typicality requirement of Rule 23(a)(3) is met when "all members of the class are victims of the same course of conduct." (*Schlagel v. Learning Tree Int'l*, 1999 U.S. Dist. LEXIS 2157 at *13 (C.D. Cal. 1999).)  "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and

whether the named plaintiffs have incentives that align with those of absent class members ... so that the absentees' interests will be fairly represented." (*Hodgers-Durgin v. Vina*, 165 F.3d 667, 679 (9th Cir. 1999).)  The typicality requirement does not mean that all claims must be identical or that the Plaintiffs must seek uniform damage awards.  (*Weinberger v. Thorton*, 114 F.R.D. 559, 603 (S.D. Cal. 1986).)  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of ... factual difference." (*In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15386, 2004 WL 1638201, 7 (C.D. Cal. 2004).)

Again, Garren's and Grandmason's claims are typical of the absent class members.  Garren and Grandmason were each required to sign an AIM Release Form as a condition of employment, as were all other members of the putative class. (Ex. B, Garren Decl. at ¶ 9; Ex. A, Grandmason Decl. at ¶ 9; Ex. C, Exhibit "A" to Chase Decl., Defendant's Supplemental Responses 4 & 7.)  Grandmason and Garren were charged the same amount for Defendant's services as other putative class members. (Ex. C, Exhibit "A" to Chase Decl., Defendant's Supplemental Responses 11.)  Garren and Grandmason had their private medical information published on a website for the convenience of the producers of adult films, just as the private medical information of all other putative class members was published on the same website.  (*Id.*, Defendant's Supplemental Responses 4

& 7).  Damages are largely set by statute and uniform throughout the class. California law sets damages for disclosures of private medical information at One Thousand Dollars ($1,000) per violation pursuant to Cal. Civil Code § 56.36(b)(2). The common elements of the claims are based on the same conduct by the Defendants, and individual issues are unlikely to overshadow the common elements of the claims.  Accordingly, the requirements of Rule 23(a)(3) are met.

### E.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) is satisfied if the named Plaintiffs' interests are not antagonistic to other members of the putative class, there are shared interests between Plaintiffs and the putative class, and Plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation.  (*In re N.D. Cal. Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir. 1982), *Lerwill v. Inflight Motion Pictures, Inc.*, 155 F.R.D. 654, 657 (N.D. Cal. 1994).)

Garren and Grandmason are not antagonistic to other members of the putative class. (Ex. B, Garren Decl. at ¶10; Ex. A, Grandmason Decl. at ¶ 10.) They share an interest in providing a safe workplace for anyone employed in adult films, and protecting the privacy of adult film performers' medical information. (Ex. B, Garren Decl. at ¶10; Ex. A, Grandmason Decl. at ¶ 10.)

### 1.    Plaintiffs' Counsel Are Adequate Class Counsel.

Counsel for Garren and Grandmason are "qualified, experienced and

---

17

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

generally able to conduct the litigation." Plaintiffs are represented by Tom Myers and F. Brian Chase, both licensed California attorneys, and the law firm of Ahdoot & Wolfson, PC.

### a.   <u>Tom Myers, Esq.</u>

Myers is a 1994 graduate of Harvard Law School, *cum laude* and worked as a litigation associate at Mitchell, Silberberg & Knupp; Curiale Dellaverson Hirshfeld Kelly & Kraemer and McKenna & Cueno in Los Angeles. (<u>Ex. C</u>, Chase Decl. at ¶ 4 & 5.) Myers has served as General Counsel for AIDS Healthcare Foundation for the past twelve years. (*Id.* at ¶6.) Chase has been Assistant General Counsel at AIDS Healthcare Foundation since 2008. (*Id.* at ¶7.)

### b.   <u>F. Brian Chase, Esq.</u>

Chase is a 1993 graduate of Tulane Law School, *cum laude*, and is licensed to practice law in California, Florida and Louisiana. (*Id.* at ¶ 8.) From 1994 to 2002 Chase worked as a litigation associate with Weaver, Kuvin, Weaver & Lipton in Ft. Lauderdale; King, LeBlanc & Bland in New Orleans (n/k/a King, Krebs & Jurgens) and with the Ft. Lauderdale office of Barret, Gravante, Carpinello & Stern (n/k/a Boies, Schiller & Flexner) (*Id.* at ¶ 9.) From 2002 to 2008 Chase was a Staff Attorney and Senior Staff Attorney with Lambda Legal Defense and Education Fund, the nation's largest nonprofit legal advocacy group for gay, lesbian, bisexual, transgender people, and people living with HIV and AIDS. (*Id.* at ¶ 10.)

---

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1   While with Lambda Legal Chase was a member of the litigation teams for

2   numerous complex cases, including *Lawrence v. Texas*, 539 U.S. 558 (2003),

3

4   striking down every sodomy law in the United States, and *Finstuen v. Crutcher*,

5   496 F.3d 1139 (10th Cir. 2007), striking down an Oklahoma law that threatened to

6   invalidate preexisting out-of-state adoptions of children by same-sex couples. (*Id.*

7   at ¶ 10.) In addition, while in private practice Chase represented Volvo Cars of

8

9   North America in multiple interstate class actions. (*Id.* at ¶ 11.)

10

11      As in-house counsel for one of the world's largest nonprofit providers of

12   care to people living with HIV and AIDS, both Myers and Chase are familiar with

13

14   the laws and regulations governing the disclosure of medical records and medical

15   testing results. (*Id.* at ¶ 12.) Accordingly, Chase and Myers can adequately

16   represent a class where the central issues of law involve the disclosure of sexually

17

18   transmitted disease test results by the Defendants.

19

20          **c.    Ahdoot & Wolfson, PC.**

21      As set forth in the Declaration of Tina Wolfson, Ahdoot & Wolfson, PC, a

22   class action litigation firm with substantial experience in privacy related class

23

24   actions, can adequately represent the proposed class. (*See generally*, Ex. J,

25   Declaration of Tina Wolfson In Support of Application of Ahdoot & Wolfson, PC

26   to be Appointed Class Co-Counsel, filed with the Court on March 14, 2011.)

27

28   / / /

---

19

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**F.    Injunctive Relief Is Appropriate And Is The Primary Relief Sought In This Action.**

Certification of a class under Rule 23(b)(2) is authorized where the Defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs here primarily seek injunctive relief. Plaintiffs seek an injunction "[t]hat Defendant Adult Industry Medical Health Care Foundation is enjoined, pursuant to Cal. Bus. & Prof. Code § 17203, from future unfair, fraudulent and deceptive trade practices, including the unauthorized disclosure of protected medical information". (FAC, p. 16:20-24.) Because Garren and Grandmason seek to end the Defendants' illegal disclosure of the private medical records of thousands of adult film performers, class certification is authorized under Rule 23(b)(2).

The fact that Plaintiffs also seek monetary damages does not preclude class certification under Rule 23(b)(2). (*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 616 (9th Cir. 2010).) Class certification under Rule 23(b)(2) is appropriate where the injunctive relief sought "predominates" over any money damages sought. Here, money damages are largely statutory damages of one thousand dollars ($1,000) per proven disclosure of private medical information pursuant to Cal. Civil Code § 56.36(b)(2), and punitive damages up to three thousand dollars ($3,000) per violation pursuant to Cal. Civil Code § 56.35. The purpose of these

statutory fines is to discourage and prevent the unauthorized disclosure of medical information, which is exactly the goal of Plaintiff's requested injunctive relief. Accordingly, injunctive relief predominates over any claimed money damages.

Although damages may be significant in the aggregate, they do not eclipse the primary relief sought: an end to the Defendants' illegal practice of disclosing private medical information to an unknown number of producers of adult films based on a faulty release form.  The Ninth Circuit has held that "the predominance test turns on the primary goal and nature of the litigation--not the theoretical or possible size of the total damages award". (*Dukes*, *supra*, 603 F.3d at 618.)  Garren and Grandmason have stated that their primary goal is to reform Defendants' testing and privacy standards, not to obtain a financial award. (Ex. B, Garren Decl. at ¶ 10; Ex. A, Grandmason Decl. at ¶ 10).  Because the ultimate objective of this lawsuit is to protect workers in the adult film industry, and not to obtain private financial gain, class certification under Rule 23(b)(2) is warranted.

### G.   Common Questions Of Law And Fact Predominate.

Rule 23(b)(3) requires that questions common to the class predominate over those affecting individual members. Rule 23(b)(3) is satisfied if "the Court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." Fed. R. Civ. Pro. 23(b)(3).  As discussed in Sections C and D, the legal and factual issues involved in this lawsuit are common to every member of the putative class.  This action revolves around the validity of the language of the AIM Release Form language purporting to allow Defendants to disclose class members' private medical information to anyone the Defendants see fit, and the legality of Defendants' collusion with the producers of adult films to the detriment of class members' health and privacy.  There do not appear to be any significant issues that are not common to every member of the putative class.

Furthermore, the class members have a very limited interest in managing individual claims because the damages available for any individual infraction are relatively small.  Again, claimed money damages largely consist of statutory damages of one thousand dollars ($1,000) per proven disclosure of private medical information pursuant to Cal. Civil Code § 56.36(b)(2), and punitive damages up to three thousand dollars ($3,000) per violation pursuant to Cal. Civil Code § 56.35. Class members' individual control of litigation is generally irrelevant where damages are relatively limited. *See Abed v. A.H. Robins Co., Inc.,* 693 F.2d 847 (9th Cir. 1982).

The large number of potential class members and the relatively small potential for individual recovery most certainly precludes individual action by class members.  The violations of class members' rights are ongoing, but are

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

unlikely to be vindicated absent a class action.  Accordingly, class certification is warranted under Rule 23.

## III.    <u>CONCLUSION</u>

Defendants' practice of disclosing private medical information to adult film producers based on a flawed and unconscionable release form constitutes both a violation of applicable privacy laws and an unfair trade practice.  Defendants' close association with adult film producers renders it unfit to serve as the exclusive guardian of worker health within the industry.

The putative class numbers in the thousands.  There are multiple legal and factual issues common to all class members.  Grandmason and Garren's claims are typical of the class, and they can adequately protect the interests of absent class members.  Finally, Plaintiffs primarily seek injunctive relief and common questions of fact and law predominate over any questions specific to individual class members.  Accordingly, class certification is appropriate under Rule 23.

Dated:  April 18, 2011

/s/ Tom Myers

_____
Tom Myers (S.B.N. 176008)

/s/ F. Brian Chase

_____
F. Brian Chase (S.B.N. 242542)

1  Dated:  April 18, 2011          AHDOOT & WOLFSON, PC

2

3                                  /s/ Robert Ahdoot

4                                  _____

5                                  Robert Ahdoot (S.B.N.  172806)
                                   Tina Wolfson (S.B.N. 174806)
6                                  Theordore W. Maya (S.B.N. 223242)

7                                  Attorneys for Plaintiffs, DIANA LEE
8                                  GRANDMASON and BESS GARREN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to the within action; my business address is **10850 Wilshire Boulevard, Suite 370, Los Angeles, California 90024.**

On April 18, 2011, I served the foregoing document(s) described as:
**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**
on the interested parties in this action by placing the true copy thereof enclosed in a sealed envelope addressed as follows:
**SEE ATTACHED SERVICE LIST**

☐ **(VIA PERSONAL SERVICE)** By causing to be delivered the document(s) listed above to the person(s) at the address(es) set forth above.

☒ **(VIA U.S. MAIL)** In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth below.

☐ **(VIA FACSIMILE)** By causing such document to be delivered to the office of the addressee via facsimile.

☐ **(VIA OVERNIGHT DELIVERY)** By causing such envelope to be delivered to the office of the addressee(s) at the addressees) set forth above by overnight delivery via Federal Express or by a similar overnight delivery service.

☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 18, 2011, at Los Angeles, California.

_/s/ James Clark_____

_____ James Clark_____

1

# SERVICE LIST

2

Case No. 10-CV-6629

3

4

5

Larry C. Baron, Esq.

6

Michael S. Lavenant, Esq.
Jennifer Raphael Komsky, Esq.

7

Landegger, Baron, Lavenant & Ingber

8

15760 Ventura Blvd., Suite 1200
Encino, California 91436

9

10

AIM Medical Associates

11

C/o Eric Fulton, Agent for Service of Process
Fulton & Meyer

12

17530 Ventura Blvd Ste 201
Encino, CA 91316

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION